

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 2:13cr ___ |
| | ) | |
| v. | ) | 18 U.S.C. § 371 |
| | ) | Conspiracy |
| KASSIAN MARITIME NAVIGATION | ) | (Count 1) |
| AGENCY, LTD., | ) | |
| (Counts 1-8) | ) | 18 U.S.C. § 1519 and 2 |
| | ) | Falsification of Records |
| ANGELEX LTD., and | ) | (Counts 2-4) |
| (Counts 1-8) | ) | |
| | ) | 33 U.S.C. § 1908(a) and 18 U.S.C. § 2 |
| LAMBROS KATSIPIS | ) | Knowing Failure to Maintain an |
| (Counts 1-8) | ) | Accurate Oil Record Book |
| | ) | (Counts 5-7) |
| *Defendants.* | ) | |
| | ) | 18 U.S.C. § 1505 and 2 |
| | ) | Obstruction of Justice |
| | ) | (Count 8) |

## INDICTMENT

May 2013 TERM – At Norfolk, Virginia

THE GRAND JURY CHARGES THAT:

At all times material to this Indictment,

## GENERAL ALLEGATIONS

### A.        THE MOTOR VESSEL ANTONIS G. PAPPADAKIS

1. The *M/V Antonis G. Pappadakis*, a 39, 017 gross ton vessel, registered under the flag administration of Malta and bearing the International Maritime Organization number 9087271, was operated by Defendant **KASSIAN MARITIME NAVIGATION AGENCY, LTD.** and owned by Defendant **ANGELEX LTD.** The *M/V Antonis G. Pappadakis* was engaged in international commercial maritime operations and transported bulk cargo to and from various ports around the world including Norfolk, Virginia.

2. The *M/V Antonis G. Pappadakis* had an Engine Department headed by a Chief Engineer assisted by a Second Assistant Engineer, and two Third Assistant Engineers. The Engineers were assisted by laborers known as "cadet", "electrician", and "fitter". The Chief Engineer reported directly to the Master of the vessel and had overall responsibility for the operations of the Engine Department, including the supervision of daily operations, formulation and implementation of Engine Department procedures, management of bilge water and sludge, and verification that all systems, including the Oil Water Separator and incinerator, were functioning properly.

## B.  THE CORPORATE DEFENDANTS

1. Defendant **KASSIAN MARITIME NAVIGATION AGENCY, LTD.** (hereinafter "KASSIAN") was a Liberian corporation with offices at 367 Syngrou Avenue, Paleo Faliro, 17564 Athens, Greece. Defendant **KASSIAN** acting through its agents and employees, who were acting within the scope of their agency and employment and for the intended benefit, at least in part, of Defendant **KASSIAN** operated the *M/V Antonis G. Pappadakis*. **KASSIAN** is the ship management company for a family shipping business. The *M/V Antonis G. Pappadakis* was named after the founder of the shipping business who founded the business in the 1930's. **KASSIAN** currently manages a fleet of eight bulk carrier vessels, including the *M/V Antonis G. Pappadakis*. The ship's Safety Management Certificate indicates **KASSIAN** is "the company" defined as the organization that has assumed responsibility for the operation of the ship from the owner and who on assuming responsibility has agreed to take over all of the duties and responsibilities imposed by the International Safety Management Code, part of the International Convention for the Safety of Life at Sea, to which the United States, Greece and Malta are

2

signatories.  International Safety Management Code ("ISM"), as implemented by 46 U.S.C. §§ 3201-3205.

2.  Defendant **ANGELEX LTD.** was a Maltese corporation with offices at 131 East Street, Valletta, Malta and 367 Syngrou Avenue, Paleo Faliro, 17564 Athens, Greece.  Defendant **ANGELEX LTD.** owned the *M/V Antonis G. Pappadakis*.  Defendant **KASSIAN** operated the *M/V Antonis G. Pappadakis* on behalf of, and for the benefit of, Defendant **ANGELEX LTD.**

C.          **THE INDIVIDUAL DEFENDANT**

1.  Defendant **LAMBROS KATSIPIS**, who was employed by Defendant **KASSIAN** on behalf of Defendant **ANGELEX LTD.**, served as the Chief Engineer of the *M/V Antonis G. Pappadakis* from on or about May 1, 2012 to on or about May 9, 2013.  At all times herein Defendant **LAMBROS KATSIPIS** acted within the scope of his employment and agency on behalf of, and for the intended benefit, at least in part, of Defendants **KASSIAN** and **ANGELEX LTD.**

.     D.          **LEGAL FRAMEWORK**

1.  The United States is part of an international regime that regulates discharges of oil from vessels at sea: the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (the "MARPOL Protocol").  The MARPOL Protocol was enacted into United States law by the Act to Prevent Pollution from Ships (APPS), Title 33, United States Code, Sections 1901, et seq.  APPS makes it a crime for any person to knowingly violate the MARPOL Protocol, APPS, or regulations promulgated under APPS.  The regulations promulgated under APPS apply to all commercial vessels over 400 gross tons operating in United States waters or while at a port or terminal under the jurisdiction of the United States,

3

including vessels operating under the authority of a country other than the United States. 33 C.F.R. § 151.09(a)(5).

2. On large commercial vessels, water and oil accumulates in bilge wells, which is commonly known as "bilge water". Bilge wells are located at the bottommost part of the vessel. Bilge water consists of water originating from spills and leaks from piping, valves and tanks. Bilge water may be contaminated with oil, oil residue, lubrication fluids, and other liquids that leak or drip from engines or pipes and hoses that run throughout the ship. Periodically bilge water is pumped into a bilge holding tank. In order to maintain bilges at safe levels, bilge tanks and wells must be periodically emptied. This can be done in one of two ways: (1) bilge water can be discharged ashore to a waste reception facility or, (2) it may be pumped over the side of the ship after being processed through a properly functioning Oil Water Separator. Pursuant to MARPOL and APPS, oil-contaminated bilge water may be discharged overboard into the ocean only if it contains a concentration of 15 parts per million ("ppm") or less of oil. MARPOL Protocol Regulation 15; 33 C.F.R. § 151.10. The principal technology utilized to lower the oil content of oil-contaminated bilge water is an Oil Water Separator, which includes an Oil Content Monitor to detect and prevent concentrations of oil in excess of 15 ppm from being discharged overboard.

3. On large commercial vessels, heavy fuel and lubrication oil that is used in propulsion and electrical generation machinery must be purified prior to use. When heavy fuel and lubrication oil is purified, oily sludge is removed and put into a sludge tank. Pursuant to MARPOL and APPS, sludge may be removed from the ship in one of two ways: (1) sludge can be discharged ashore to a waste reception facility or, (2) it can be burned in the ship's incinerator.

4

4. MARPOL requires that a foreign flagged non-oil tanker ship of 400 gross tons and above maintain a record known as an Oil Record Book in which all disposals of oil residue and the discharge overboard or disposal otherwise of sludge and bilge water that has accumulated in the machinery spaces must be recorded. APPS imposes the same requirements consistent with MARPOL while within the jurisdiction of the United States. 33 C.F.R. § 151.25(d). Specifically, discharges of bilge water, sludge, and oily mixtures must be fully recorded, without delay, in the Oil Record Book by the person in charge of the operations. *Id.* The Oil Record Book also must contain entries concerning any emergency, accidental, or other exceptional discharges of oil or mixtures. 33 C.F.R. § 151.25(g). The Oil Record Book must be maintained onboard the vessel for not less than three years, and be readily available for inspection at all reasonable times. 33 C.F.R. § 151.25.

5. The United States Coast Guard, an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under 14 U.S.C. § 89(a) to board vessels and conduct inspections and investigations of potential violations of international and United States law, including MARPOL and APPS. In conducting inspections, commonly known as Port State Control inspections, United States Coast Guard personnel rely on the statements of the vessel's crew and documents, including information contained in the Oil Record Book. The United States Coast Guard is specifically authorized to examine the vessel's Oil Record Book to determine, among other things, whether the vessel has operable pollution prevention equipment and appropriate procedures, whether it poses any danger to United States' ports and waters, and whether the vessel has discharged any oil or oily mixtures in violation of MARPOL, APPS, or any applicable federal regulations. 33 C.F.R. §§ 151.23(a)(3) and (c). If the United States Coast Guard finds evidence that a vessel is not in

5

substantial compliance with MARPOL or APPS, the United States Coast Guard is empowered to deny a vessel's entry into a United States' port or detain the vessel until it is determined that the vessel does not present an unreasonable threat to the marine environment.  33 C.F.R. §§ 151.07(b) and 151.23(b).

## COUNT ONE

1.      Sections A through D of the General Allegations Section are specifically incorporated and re-alleged herein.

2.      **OBJECTIVE OF THE CONSPIRACY**

Beginning at a time unknown, but no later than on or about May 1, 2012, until on or about April 17, 2013, within the navigable waters, internal waters and ports of the United States, in the Eastern District of Virginia and elsewhere, the Defendants **KASSIAN, ANGELEX LTD.,** and **LAMBROS KATSIPIS**, and others known and unknown to the Grand Jury, did knowingly and willfully conspire, confederate and agree with each other and with other persons known and unknown to the Grand Jury to:

A.      knowingly fail to maintain an Oil Record Book for the *M/V Antonis G. Pappadakis*, in violation of Title 33, United States Code, Section 1908(a); and Title 33, Code of Federal Regulations, Sections 151.25(a) and 151.25(h) and;

B.      knowingly alter, conceal, cover up, falsify and make a false entry in a record to wit: the Oil Record Book for the *M/V Antonis G. Pappadakis*, with the intent to impede, obstruct and influence the investigation or proper administration of a matter within the jurisdiction of the United States Coast Guard and Department of Homeland Security, in violation of Title 18, United States Code, section 1519.

6

3.    **MANNER AND MEANS**

Among the manner and means used by Defendants **KASSIAN, ANGELEX LTD.**, and

**LAMBROS KATSIPIS**, to effectuate this conspiracy and to further its objectives were the

following:

A.    Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS** regularly

and routinely used, and directed the use of pumps and hoses to discharge bilge water from

machinery spaces on the vessel directly into the sea through the Marine Sanitation Device, by-

passing required pollution prevention equipment.

B.    Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**,

knowingly covered up the fact that machinery space bilge water was routinely discharged from

the *M/V Antonis G. Pappadakis* without using required pollution prevention equipment by failing

to record the discharges in the Oil Record Book.

C.    Defendant **KASSIAN**, operated the *M/V Antonis G. Pappadakis*, and caused the

vessel to enter the internal waters and ports of the United States knowing the vessel was carrying

a false Oil Record Book.

4.    **OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY**

On or about the dates below and in furtherance of the conspiracy and to effect the object

thereof, there was committed and caused to be committed by Defendants **KASSIAN,**

**ANGELEX LTD.**, and **LAMBROS KATSIPIS**, in the Eastern District of Virginia and

elsewhere, at least one of the following overt acts, among others:

**OVERT ACT 1.** During a voyage ending in Norfolk, Virginia, on or about July 24,

2012, Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, and other

members of the conspiracy, directed subordinates to discharge and caused the discharge of

7

machinery space bilge water from the *M/V Antonis G. Pappadakis* directly overboard into the sea through the Marine Sanitation Device, bypassing the ship's Oil Water Separator and other required pollution prevention equipment.

**OVERT ACT 2.** During a voyage ending in Norfolk, Virginia, on or about July 24, 2012, Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, and other members of the conspiracy, failed to record in the Oil Record Book for the *M/V Antonis G. Pappadakis* that machinery space bilge water had been discharged overboard through the vessel's Marine Sanitation Device.

**OVERT ACT 3.** On or about July 24, 2012, Defendants **KASSIAN,** and **LAMBROS KATSIPIS**, and other members of the conspiracy, caused the *M/V Antonis G. Pappadakis* to enter the navigable waters, internal waters and a port of the United States in Norfolk, Virginia, with a knowingly falsified Oil Record Book.

**OVERT ACT 4.** On or about July 26, 2012, Defendants **KASSIAN,** and **LAMBROS KATSIPIS**, and other members of the conspiracy, presented a knowingly falsified Oil Record Book for the *M/V Antonis G. Pappadakis* to Coast Guard inspectors.

**OVERT ACT 5.** During a voyage ending in Norfolk, Virginia, on or about November 3, 2012, Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, and other members of the conspiracy, directed subordinates to discharge and caused the discharge of machinery space bilge water from the *M/V Antonis G. Pappadakis* directly overboard into the sea, bypassing the ship's Oil Water Separator and other required pollution prevention equipment.

**OVERT ACT 6.** During a voyage ending in Norfolk, Virginia, on or about November 3, 2012, Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, and other members of the conspiracy, failed to record in the Oil Record Book for the *M/V Antonis G.*

*Pappadakis* that machinery space bilge water had been discharged overboard through the vessel's Marine Sanitation Device.

**OVERT ACT 7.**  On or about November 3, 2012, Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, and other members of the conspiracy, caused the *M/V Antonis G. Pappadakis* to enter the navigable waters, internal waters and a port of the United States in Norfolk, Virginia, with a knowingly falsified Oil Record Book.

**OVERT ACT 8.**  During a voyage ending in Norfolk, Virginia, on or about April 14, 2013, Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, and other members of the conspiracy, directed subordinates to discharge and caused the discharge of machinery space bilge water from the *M/V Antonis G. Pappadakis* directly overboard into the sea, bypassing the ship's Oil Water Separator and other required pollution prevention equipment.

**OVERT ACT 9.**  During a voyage ending in Norfolk, Virginia, on or about April 14, 2013, Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, and other members of the conspiracy, failed to record in the Oil Record Book for the *M/V Antonis G. Pappadakis* that machinery space bilge water had been discharged overboard through the vessel's Marine Sanitation Device.

**OVERT ACT 10.**  On or about April 14, 2013, Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, and other members of the conspiracy, caused the *M/V Antonis G. Pappadakis* to enter the navigable waters, internal waters and a port of the United States in Norfolk, Virginia, with a knowingly falsified Oil Record Book.

**OVERT ACT 11.**  On or about April 15, 2013, in Norfolk, Virginia, Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, immediately prior to their being interviewed by Coast Guard personnel, instructed junior engineering crewmembers of the *M/V*

*Antonis G. Pappadakis*, in sum and substance, to not speak to United States Coast Guard personnel.

**OVERT ACT 12.** On or about April 16, 2013, in Norfolk, Virginia, Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, immediately prior to their being interviewed by Coast Guard personnel, instructed junior engineering crewmembers of the *M/V Antonis G. Pappadakis*, in sum and substance, to not speak to United States Coast Guard personnel.

**OVERT ACT 13.** On or about April 17, 2013, in Norfolk, Virginia, Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, immediately prior to their being interviewed by Coast Guard personnel, instructed junior engineering crewmembers of the *M/V Antonis G. Pappadakis*, in sum and substance, to not speak to United States Coast Guard personnel.

(All in violation of Title 18, United States Code, Section 371.)

## COUNT TWO

1. Sections A through D of the General Allegations Section are specifically incorporated and re-alleged herein.

2. During a voyage ending on or about July 24, 2012, terminating in and within the navigable waters, internal waters and ports of the United States in Norfolk, Virginia, in the Eastern District of Virginia, the Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the United States Coast Guard and the Department of Homeland Security, and in

relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with the MARPOL Protocol and United States law, did knowingly conceal, cover up, and falsify, and make a false entry in a record and document, that is, a false, fictitious and misleading Oil Record Book for the *M/V Antonis G. Pappadakis* that concealed the overboard discharge of machinery space bilge water.

(All in violation of Title 18, United States Code, Section 1519, and Title 18, United States Code, Section 2.)

## COUNT THREE

1. Sections A through D of the General Allegations Section are specifically incorporated and re-alleged herein.

2. During a voyage ending on or about November 3, 2012, terminating in and within the navigable waters, internal waters and ports of the United States in Norfolk, Virginia, in the Eastern District of Virginia, the Defendants **KASSIAN, ANGELEX LTD.,** and **LAMBROS KATSIPIS,** with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the United States Coast Guard and the Department of Homeland Security, and in relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with the MARPOL Protocol and United States law, did knowingly conceal, cover up, and falsify, and make a false entry in a record and document, that is, a false, fictitious and misleading Oil Record Book for the *M/V Antonis G. Pappadakis* that concealed the overboard discharge of machinery space bilge water.

(All in violation of Title 18, United States Code, Section 1519, and Title 18, United States Code, Section 2.)

## COUNT FOUR

1. Sections A through D of the General Allegations Section are specifically incorporated and re-alleged herein.

2. During a voyage ending on or about April 14, 2013, terminating in and within the navigable waters, internal waters and ports of the United States in Norfolk, Virginia, in the Eastern District of Virginia, the Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the United States Coast Guard and the Department of Homeland Security, and in relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with the MARPOL Protocol and United States law, did knowingly conceal, cover up, and falsify, and make a false entry in a record and document, that is, a false, fictitious and misleading Oil Record Book for the *M/V Antonis G. Pappadakis* that concealed the overboard discharge of sludge and machinery space bilge water.

(All in violation of Title 18, United States Code, Section 1519, and Title 18, United States Code, Section 2.)

## COUNT FIVE

1. Sections A through D of the General Allegations Section are specifically incorporated and re-alleged herein.

2. On or about July 24, 2012, within the navigable waters, internal waters and ports of the United States in Norfolk, Virginia, in the Eastern District of Virginia, the Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, did knowingly fail to maintain an Oil Record Book for the *M/V Antonis G. Pappadakis* in which all disposals and overboard

12

discharges of sludge, oil residue, and machinery space bilge water were required to be fully recorded and falsely stated that discharges had been made through pollution prevention equipment. Specifically, the Defendants maintained an Oil Record Book that failed to disclose overboard discharges of machinery space bilge water without the use of a properly functioning Oil Water Separator and oil monitoring equipment.

(All in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Section 2; Title 33, Code of Federal Regulations, Section 151.25; and the MARPOL Protocol, Annex I, Regulation 17, 1340 U.N.T.S. 61, 62 & 184.)

## COUNT SIX

1. Sections A through D of the General Allegations Section are specifically incorporated and re-alleged herein.

2. On or about November 3, 2012, within the navigable waters, internal waters and ports of the United States in Norfolk, Virginia, in the Eastern District of Virginia, the Defendants **KASSIAN, ANGELEX LTD.**, and **LAMBROS KATSIPIS**, did knowingly fail to maintain an Oil Record Book for the *M/V Antonis G. Pappadakis* in which all disposals and overboard discharges of sludge, oil residue, and machinery space bilge water were required to be fully recorded and falsely stated that discharges had been made through pollution prevention equipment. Specifically, the Defendants maintained an Oil Record Book that failed to disclose overboard discharges of machinery space bilge water without the use of a properly functioning Oil Water Separator and oil monitoring equipment.

(All in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Section 2; Title 33, Code of Federal Regulations, Section 151.25; and the MARPOL Protocol, Annex I, Regulation 17, 1340 U.N.T.S. 61, 62 & 184.)

## COUNT SEVEN

1. Sections A through D of the General Allegations Section are specifically incorporated and re-alleged herein.

2. On or about April 14, 2013, within the navigable waters, internal waters and ports of the United States in Norfolk, Virginia, in the Eastern District of Virginia, the Defendants **KASSIAN, ANGELEX LTD.,** and **LAMBROS KATSIPIS,** did knowingly fail to maintain an Oil Record Book for the *M/V Antonis G. Pappadakis* in which all disposals and overboard discharges of sludge, oil residue, and machinery space bilge water were required to be fully recorded and falsely stated that discharges had been made through pollution prevention equipment. Specifically, the Defendants maintained an Oil Record Book that failed to disclose overboard discharges of machinery space bilge water without the use of a properly functioning Oil Water Separator and oil monitoring equipment.

(All in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Section 2; Title 33, Code of Federal Regulations, Section 151.25; and the MARPOL Protocol, Annex I, Regulation 17, 1340 U.N.T.S. 61, 62 & 184.)

## COUNT EIGHT

1. Sections A through D of the General Allegations Section are specifically incorporated and re-alleged herein.

2. Between on or about April 15, 2013 until on or about April 17, 2013, within the navigable waters, internal waters and ports of the United States in Norfolk, Virginia, in the Eastern District of Virginia, the Defendants, **KASSIAN, ANGELEX LTD.,** and **LAMBROS KATSIPIS,** did corruptly influence, obstruct and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under a pending proceeding by the United States Coast Guard and the Department of Homeland Security, to wit, after the Coast

14

Guard began a Port State Control inspection of the *M/V Antonis G. Pappadakis* to determine the

vessel's compliance with MARPOL and United States law, **KASSIAN** and **ANGELEX LTD.**,

acting through their employee and agent, **LAMBROS KATSIPIS**, who was acting within the

scope of his employment and agency, instructed junior engineering crew members to not speak

to United States Coast Guard personnel and presented a knowingly false and fictitious Oil

Record Book that failed to disclose overboard discharges of machinery space bilge water.

(All in violation of Title 18, United States Code, Section 1505, and Title 18, United
States Code, Section 2.)

<u>United States v. Kassian Maritime Navigation Agency, LTD., et.al.</u>
Criminal No. 2:13cr 70

A TRUE BILL:

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.


FOREPERSON


NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By:      _____
Joseph L. Kosky
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number (757) 441-6331
Facsimile Number (757) 441-3205
E-Mail Address - joseph.kosky@usdoj.gov


IGNACIA S. MORENO
ASSISTANT ATTORNEY GENERAL
Environment and Natural Resources Division
United States Department of Justice

By:      _____
Kenneth E. Nelson
Trial Attorney
Environmental Crimes Section
United States Department of Justice
601 D. Street, NW, Suite 2814
Washington, DC 20004
Office Number (202) 305-0435
Facsimile Number (202) 514-8865
E-Mail Address – kenneth.nelson@usdoj.gov


16